United States Court of Appeals
Fifth Circuit

**F I L E D**

September 21, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-40835

United States of America

Plaintiff-Appellee,

versus

Eric Del Barrio,
also known as Andy Lopez

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Eric Del Barrio pled guilty to possession with the intent to distribute approximately 32.75 kilograms of marijuana in violation of 21 U.S.C. § 841(b)(1)(D). He was sentenced to 50 months imprisonment and three years supervised release. His supervised release was revoked after he violated the release terms, and he was sentenced to another three-year term of imprisonment, which was suspended in favor of a 120-day period of confinement in a community corrections facility. Subsequently, Del Barrio again violated the terms of his supervised release and was sentenced to

the statutory maximum term of two years imprisonment under 18 U.S.C. § 3583(e)(3).[1]

On appeal, Del Barrio contends, for the first time, that the sentence imposed for violating the terms of his supervised release exceeded the statutory maximum two-year sentence when the 120-day period of confinement in a community corrections facility, which he contends is a term of imprisonment, is taken into account. We reject his contention and affirm his sentence.

I

On January 20, 1999, Del Barrio pled guilty to possession with intent to distribute approximately 32.75 kilograms of marijuana in violation of 21 U.S.C. § 841(b)(1)(D). Del Barrio was sentenced to 50 months imprisonment, to be followed by three years of supervised release. After serving his prison sentence, Del Barrio began his term of supervised release on September 10, 2001. One year later, in September 2002, the district court found that Del Barrio violated the terms of his supervised release and sentenced him to three years imprisonment, which was suspended in favor of a 120-day period of confinement in a community corrections facility. Del Barrio contends that such confinement constitutes "imprisonment," which, when combined with the subsequent two-year term of

---

[1]The parties do not dispute that the underlying felony in this case is a Class D felony. The maximum term of imprisonment for a class D felon whose term of supervised release is revoked is two years. 18 U.S.C. § 3583(e)(3) (2000).

incarceration, exceeds the statutory maximum in 18 U.S.C. § 3583(e)(3).

In the district court's written judgment, the court included the community-correction-facility term under the heading of "Imprisonment," and not under the headings of "Supervised Release," "Standard Conditions of Supervised Release," or "Additional Supervised Release Terms." The court did note, however, that the 120-day confinement was imposed as a "special condition of supervised release." During the proceeding, the judge stated:

> I am going to revoke your Supervised Release Term. I am going to commit you to the custody of the Bureau of Prisons for a period of three years. I am going to suspend the execution of that Order of confinement and cause you to be confined in a halfway house 120 days and to be continued on Supervised Release Term until your expiration date.

In May 2004, Del Barrio again was in front of the district court regarding a violation of his supervised release term. The district court revoked Del Barrio's supervised release and ordered him imprisoned for a term of 24 months.[2] Del Barrio did not object to this sentence, and he timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II

---

[2]In *United States v. Jackson*, this Court held that the two-year maximum term of imprisonment under § 3586(e)(3) applies on a cumulative basis, not separately to each time supervised release is revoked. 329 F.3d 406, 407-08 (5th Cir. 2003).

3

A defendant's failure to contemporaneously object to an alleged error generally results in plain error review.[3] However, we review *de novo* a sentence that allegedly exceeds the statutory maximum term.[4]

Del Barrio contends that the district court erred when it sentenced him to a term of imprisonment in excess of the statutory maximum two years. Del Barrio's arguments center around the district court's intent. First, Del Barrio argues that the district court must have intended the 120-day confinement at a community corrections facility to be imprisonment because the court lacked the authority to impose such a condition as a term of supervised release. Second, Del Barrio argues that because the district court was required to state in open court the imposition of any special condition of supervised release, the fact that he did not do so indicates that he considered the 120-day confinement in a community corrections facility as a term of imprisonment.

A

Del Barrio's contention that the district court lacked authority to impose confinement in a community corrections facility

---

[3]*See, e.g.*, *United States v. Ferguson*, 369 F.3d 847, 849 (5th Cir. 2004). In *Ferguson*, the defendant argued that the term of incarceration imposed by the court exceeded the statutory maximum when combined with the term of home detention served during his supervised release. *Id.* at 848. The court ruled that, despite Ferguson's failure to object to the term of his incarceration, his claim should be reviewed *de novo*. *Id.* at 849 n.2.

[4]*Id.* at 849; *see also United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000) (explaining that "because a sentence which exceeds the statutory maximum is an illegal sentence and therefore constitutes plain error, our review of the issue presented in this appeal will be de novo").

as a condition of supervised release is without merit.  Section 3583 governs the district court's discretion in imposing terms of a supervised release following imprisonment.[5]  Under § 3583(d), subject to certain considerations, the district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate."[6] Conspicuously absent is § 3563(b)(11), which provides that the district court, at its discretion, may require that the defendant "reside at, or participate in the program of, a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of probation."[7]

Del Barrio argues that we adopt a plain language reading of the statute: since § 3563(b)(11) is not listed in § 3583(d), the district court lacked authority to impose confinement in a community corrections facility as a condition of supervised release; thus, such imposition must be a term of "imprisonment." In accordance with the Eighth and Ninth Circuits,[8] we hold that the

---

[5]18 U.S.C. § 3583 (2000).

[6]*Id.* § 3583(d).

[7]18 U.S.C. § 3563(b)(11) (2000).

[8]*See United States v. Griner*, 358 F.3d 979, 981-82 (8th Cir. 2004); *United States v. Bahe*, 201 F.3d 1124, 1136 (9th Cir. 2000).

5

district court has authority to impose confinement in a community corrections facility as a condition of a supervised release term.

Given the lengthy treatment of the legislative history behind § 3563 and § 3583 by the Ninth Circuit in *United States v. Bahe*, we provide only a streamlined version. In 1984, Congress enacted § 3583(d) as part of the Sentencing Reform Act of 1984, set forth in Title II of the Comprehensive Crime Control Act of 1984.[9] Section 3583(d) unambiguously gave courts the discretion to impose confinement in a community corrections facility as a discretionary condition of supervised release; as it does today, § 3583(d) referenced § 3563(b)(12), which is the same as the current version of § 3563(b)(11).[10]

Twelve years later, Congress made the clerical error that is at issue in this appeal. Congress enacted the Mandatory Victims Restitution Act of 1996 (MVRA), a portion of the Antiterrorism and Effective Death Penalty Act of 1996.[11] The MVRA amended § 3563(b); specifically, the MVRA deleted § 3563(b)(2), which authorized the imposition of a fine as a discretionary condition of supervised release, and renumbered the remaining subsections.[12] This

---

[9]*See* Sentencing Reform Act of 1984, chs. 227-228, Pub. L. 98-473, Title II, 98 Stat. 1993 (1984) (codified as amended 18 U.S.C. §§ 3551-3742 (2000)).

[10]*See* 18 U.S.C. § 3563(b)(12) (1984).

[11]*See* Mandatory Victims Restitution Act of 1996, Pub. L. 103-132, Title II, subtitle A, 110 Stat. 1227 (1996) (codified as 18 U.S.C. § 3663A, 3613A).

[12]*See* Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996) (providing that § 3563(b) be amended "by striking paragraph (2)" and "redesignating paragraphs (3) through (22) as

renumbering caused § 3563(b)(12) to become § 3563(b)(11)——the numerical subsection omitted from § 3583(d), which remains unchanged.

Given the ambiguity, a resort to legislative history is appropriate.  We agree with the findings of the Eighth and Ninth Circuits that Congress did not intend to effectuate a change in the terms of supervised release within the district court's discretion.  As the Ninth Circuit notes:

> Nothing in the text or legislative history of the MVRA or § 3563 suggests that Congress intended to alter the conditions that a sentencing court may attach to a term of supervised release under § 3583(d).  Nor is there any indication that Congress ever intended the MVRA to exclude or eliminate a sentencing court's authority to confine a defendant to a community treatment center as a condition of his or her supervised release.  Although the legislative history of the MVRA is extensive, it is utterly silent as to its affect on § 3583(d).  Under these circumstances, we decline to interpret this silence as an indication of congressional intent to amend the law on conditions of supervised release.[13]

Thus, we conclude that the absence of § 3563(b)(11) from § 3583 was "an inadvertent casualty of [the] complex drafting process."[14]  We reject Del Barrio's argument that the district court lacked authority to impose the 120-day confinement in a community

---

paragraphs (2) through (21), respectively").

[13]*Bahe*, 201 F.3d at 1131-32 (internal citations omitted); *see also Griner*, 358 F.3d at 981-82 (finding the same and concluding that the amendments to § 3563 were "essentially a bookkeeping change").

[14]*Taylor v. United States*, 495 U.S. 575, 589-90 (1990).

7

corrections facility as a condition of Del Barrio's supervised release.

B

Given our holding that the district court had authority to impose confinement in a community corrections facility as a condition of supervised release, we now must turn to Del Barrio's contention that the district court intended the 120-day confinement in this case to be a term of imprisonment rather than a condition of supervised release.

Del Barrio is correct that our case law holds that when there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls.[15] This is because a criminal defendant has a constitutional right to be present at sentencing.[16] However, and fatal to Del Barrio's case, if there is merely an ambiguity between the two sentences, the entire record must be examined to determine the district court's true intent.[17]

*United States v. Martinez* is illustrative. There, the district court sentenced the defendant to a 36-month term of imprisonment, a four-year term of supervised release, and, in lieu

---

[15]*See United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001).

[16]*Id.* (*citing United States v. A-Abras*, 185 F.3d 26, 29 (2d Cir. 1999); FED. R. CRIM. P. 43(a) ("The defendant shall be present . . . at the imposition of sentence . . . .")).

[17]*See United States v. De La Pena-Juraez*, 214 F.3d 594, 601 (5th Cir. 2000).

8

of a fine, ordered him to serve 100 hours of community service.[18] This court, on review of the record, found that "[n]o other conditions of supervised release were mentioned."[19] The subsequent written order, however, contained a special condition that required the defendant to submit to various drug rehabilitation programs and frequent drug tests.[20] In light of the square conflict between the oral pronouncement and the written sentence, this Court vacated the defendant's sentence and remanded the case for the court to amend its written judgment to conform to its oral sentence.[21]

Here, there is, at best, an ambiguity between the two sentences. During sentencing, the district court specifically mentioned the 120-day term of confinement in a community corrections facility on several occasions. In fact, Del Barrio, in his brief, references each of these statements. For instance, the district court stated:

> I am going to revoke your Supervised Release Term. I am going to commit you to the custody of the Bureau of Prisons for a period of three years. I am going to suspend the execution of that order of confinement and cause you to be confined in a halfway house 120 days and to be continued on Supervised Release Term until your expiration date.

---

[18]*Martinez*, 250 F.3d at 941-42.

[19]*Id.* at 942.

[20]*Id.*

[21]*Id.*

Arguably, the court's written order creates some ambiguity.  Under the section marked "Imprisonment," the court imposed the three-year sentence and stated that the sentence was suspended in favor of 120-days in a community corrections facility "as a special condition of supervised release."  This seems to conflate the special condition and the term of imprisonment.  Moreover, there was no mention of the 120-days confinement in the sections marked "Supervised Release," "Standard Conditions of Supervision," or "Additional Supervised Release Terms."  As the written sentence creates some ambiguity, we must examine the entire record to determine whether the court intended the 120-days of confinement as a term of imprisonment or as a condition of supervised release.[22]

Here, our examination of the record reveals that the court considered the 120-days of confinement as a condition of supervised release, not as a term of imprisonment.  First, the court noted that although Del Barrio should be imprisoned for three years, the court "will suspend the execution of that period of imprisonment and place him in a halfway house for 120 days."  This statement suggests that the district court judge did not consider Del Barrio's 120-day confinement as a term of imprisonment.  In addition, a review of the record indicates that the judge would rather have sentenced Del Barrio to jail time,

_____

[22]*De La Pena-Juraez*, 214 F.3d at 601.

10

but, given the recommendation of the probation officer, the judge opted instead for the 120-day confinement in a community corrections facility. For instance, the court stated:

> [The probation officer] is recommending 120 days. She shouldn't have done that. She should not have done that. And much less it is within my province. However, I will defer to those types of things because it is customary. And certainly she has already indicated that apparently she feels she can work with this fellow. I don't agree with that.
> But I will tell you what I will do. You talk to your client. He owes us three years. I will send him away for three years. I will suspend the execution of that period of imprisonment and place him in a halfway house for 120 days. However, until and when this Supervised Release Term is over, he spits on the sidewalk, we are not going to get any more hearings. He is going away for three years.

Finally, all of this is consistent with the written order, which provided that the 120-days in a community corrections facility was "a special condition of supervised release."

Lastly, relying on the Bureau of Prisons' <u>Judicial Resource Guide to the Federal Bureau of Prisons</u> 2000 memo, Del Barrio argues that the district court had authority to impose the 120-day confinement as a term of imprisonment. Del Barrio fails to cite any case law suggesting that time served in a community corrections facility is equivalent to time served in imprisonment. Given the overwhelming evidence that the court considered the 120-day confinement as a condition of Del Barrio's supervised release term, we decline to consider this issue.

III

Accordingly, Del Barrio's sentence is AFFIRMED.

11